**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARIO TERRELL MCBEE, a/k/a Mario
Terel McBee, a/k/a Marrio Terrell McBee,

    Defendant - Appellant.

No. 25-5049
(D.C. No. 4:23-CR-00334-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **MURPHY**, and **FEDERICO**, Circuit Judges.
_____

## I.    INTRODUCTION

Following a jury trial, the defendant-appellant, Mario Terrell McBee, was

found guilty of unlawfully possessing a firearm and ammunition as a convicted felon.

_See_ 18 U.S.C. § 922(g)(1). McBee appeals his conviction by raising three arguments.

First, he raises a pair of evidentiary contentions, arguing the admission of certain

expert testimony violated Federal Rules of Evidence 704(b) and, in the alternative,

403. He then raises an as-applied constitutional challenge to § 922(g)(1).

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Both evidentiary issues are subject to plain-error review because McBee failed to timely object in the district court. *See United States v. Garza*, 566 F.3d 1194, 1200 (10th Cir. 2009). Neither challenge satisfies the plainness requirement because, even assuming an error exists, McBee fails to identify one that is "clear or obvious under current, well-settled law." *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019). McBee's constitutional challenge, as he admits himself, is foreclosed by binding precedent of this circuit. *See generally Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025). Therefore, exercising jurisdiction pursuant to 28 U.S.C. § 1291, the court **affirms** the judgment of the district court.

## II.    BACKGROUND

McBee fell unconscious as he was being taken to the Claremore Indian Hospital in Oklahoma. When, upon arrival, nurses lifted his shirt to administer aid, they found a loaded handgun in the waistband of his sweatpants and various rounds of ammunition in his possession. Subsequent investigation revealed McBee had prior felony convictions. Due to his criminal history, McBee was indicted in the Northern District of Oklahoma on a single count of being a felon in possession of a firearm and ammunition. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8) (setting forth the penalties for a knowing violation of § 922(g)(1)).

McBee moved to dismiss the indictment in the district court. While recognizing his position was precluded by then-current law of the Tenth Circuit, McBee—for the sake of preserving the issue for appeal and potential future review—argued § 922(g)(1) was unconstitutional both on its face and as applied to him. The

2

motion was denied, as the district court rejected both challenges, and the case proceeded to a jury trial.

During its case in chief, the government called Agent Brett Williams from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as one of its witnesses. In explaining the responsibilities of his role, Williams testified he was, among other things, a "nexus specialist," trained in determining if or how a particular firearm or ammunition "moved in commerce." ROA Vol. III at 132:9-12. He described "commerce" as "the movement of any item from within one state to outside of that state." ROA Vol. III at 132:12-15. After he testified regarding his training, experience, and knowledge on the subject matter, Williams was qualified as "an expert witness to nexus." ROA Vol. III at 144:11-12.

Williams then explained his involvement in the instant case. He was tasked with conducting the nexus analysis for the firearm and ammunition found on McBee's person before the case was presented to the grand jury. Williams detailed his typical analytical process before explaining how those methods were applied to the case at bar. He ultimately concluded both the firearm and ammunition moved through interstate or foreign commerce before being found in Oklahoma.

At the end of the trial, the jury was tasked with finding whether the government proved the following beyond a reasonable doubt:

1) McBee knowingly possessed a firearm or ammunition found on his person;

2) McBee had previously been convicted of a felony;

3

3) McBee knew that he had previously been convicted of a felony at the time he possessed the firearm or ammunition;

4) Before McBee possessed the firearm or ammunition, those items had moved through interstate commerce;

5) McBee had possessed the firearm or ammunition in the Northern District of Oklahoma.

Included in the jury instructions were the parties' stipulations as to McBee's prior felony convictions, his knowledge of the same, and his presence in the Northern District of Oklahoma during all times relevant.

The jury found McBee guilty of the charged offense. Following his conviction, McBee was sentenced to seventy months' imprisonment, followed by three years of supervised release. He timely appealed.

## III.    DISCUSSION

McBee presents three issues on appeal. First, he challenges the admission of certain parts of Williams's expert testimony, arguing it to be a violation of Federal Rule of Evidence 704(b). Second, he attacks the same testimony under Federal Rule of Evidence 403. Third, he raises an as-applied constitutional challenge to 18 U.S.C. § 922(g)(1), asserting the district court erred in denying his motion to dismiss the indictment.

### A. Williams's Expert Testimony

After being qualified as an expert, Williams, on direct examination, provided background details regarding his role in the instant matter. He disclosed that, due to resource constraints at the ATF, the FBI completed the initial investigation before

4

transferring the case to his agency. Willams then testified that, consistent with his typical approach, he reviewed all reports that were prepared by the FBI before assessing whether any additional steps needed to be taken. As Williams explained his decision not to conduct any follow-up investigation before the case was presented to the grand jury, he had the following exchange with a government attorney:

> [Agent Williams]: I reviewed all the reports that were provided by FBI to the case agent in this [matter]. . . . [B]ecause the group was so busy, I went ahead and reviewed [McBee's] case and went to [the] [g]rand [j]ury for it.
>
> [Prosecution]: And prior to going, did anything in the reports [from the FBI] that you reviewed – without saying what's in the reports – did anything give you cause at all to where you would need a follow-up investigation?
>
> [Agent Williams]: No. I felt like every – *all the elements of the crime had been met* and that the reports with witness statements written by the witnesses, as well as the interview, got all of the elements of the crime and was able to move forward with that.

ROA Vol. III at 146:15-147:9 (emphasis added). Later, during the same direct examination, Williams again referenced the "elements of the crime" when asked about the scope of his investigation:

> [Agent Williams]: . . . The elements – again, the *elements of the crime* had been met already. The suspect in the crime and the items that were necessary to prove that crime were on-site. The witness returned, gave a statement, and there is – there was no additional items I would need to look for in a third party's vehicle, especially with the statement that I received.

ROA Vol. III at 148:21-149:2 (emphasis added). These statements—and others like them in which Williams offers his opinion regarding what he called "the elements of the crime"—are the focus of McBee's evidentiary challenges.

### i. *Federal Rule of Evidence 704(b)*

Because McBee failed to contemporaneously object at trial regarding any alleged violation of Rule 704(b), the district court's ruling is reviewed for plain error. *United States v. Archuleta*, 737 F.3d 1287, 1297 (10th Cir. 2013). Under this standard, the appellant must show (1) error that is (2) plain, which (3) affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If these elements are satisfied, the court may exercise its discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. B.N.M.*, 107 F.4th 1152, 1170 (10th Cir. 2024) (quotation omitted).

Federal Rule of Evidence 704(b) provides as follows:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

18 U.S.C. § 922(g)(1), in turn, requires the government to establish the defendant acted with a certain mental state. To sustain McBee's conviction, the government must prove beyond a reasonable doubt he: 1) was previously convicted of a felony; 2) thereafter knowingly possessed a firearm or ammunition; 3) knew about his status as a felon when possessing the firearm; and 4) the possession was in or affecting interstate commerce. *See United States v. Trujillo*, 960 F.3d 1196, 1200-01 (10th Cir. 2020).[1] The second element—the knowing possession of a firearm and ammunition—

---

[1] In addition to these four elements, the jury was tasked with finding whether McBee had possessed the firearm or ammunition in the Northern District of Oklahoma. The location of the offense conduct was undisputed, however, as the

represents the only aspect of the scienter requirement at issue in this appeal as McBee

stipulated to his knowledge of his status as a felon. *Cf. Rehaif v. United States*, 588

U.S. 225, 231-32 (2019) (discussing the scienter requirement of § 922(g)(1)).

According to McBee, Williams, by stating that "the elements of the crime had

been met," was offering an expert opinion regarding the relevant mens rea element of

§ 922(g)(1) in violation of Rule 704(b). To satisfy the plainness prong, McBee cites

to the language of Rule 704(b) itself and *United States v. Maryboy*, 138 F.4th 1274

(10th Cir. 2025). *See United States v. Finnesy*, 953 F.3d 675, 697 (10th Cir. 2020)

("[I]t is true that the plain terms of a statute or regulation in certain instances can

provide the basis for a plain-error finding."). In *Maryboy*, this court held that

"[e]xpert testimony violates Rule 704(b) when it asserts a final conclusion or

inference that the defendant acted with the requisite mens rea." 138 F.4th at 1284; *see

id.* at 1286-87 ("The critical question is whether the opinion allows the fact finder to

make an additional inference as to whether the defendant had the mental state or

condition constituting an element of the crime charged." (quotation omitted)).

Neither authority resolves the obviousness of the purported error.[2] *United

States v. Cantu*, 964 F.3d 924, 935 (10th Cir. 2020) ("An error is plain if it is clear or

---

parties had stipulated McBee was within the Northern District of Oklahoma at all
times relevant.

[2] Because McBee's failure to show the plainness is dispositive, the court
declines to address any of the other requirements of plain-error review. *See United
States v. Doe*, 154 F.4th 777, 786 (10th Cir. 2025).

obvious under current, well-settled law of this court or the Supreme Court." (quotation omitted)). Rule 704(b) does not plainly exclude Agent Williams's testimony, and *Maryboy* is not directly on point.

First, it is not clear whether Williams was stating an opinion as to McBee's mental state. *See* Fed. R. Evid. 704(b) (proscribing expert witnesses from offering an opinion regarding the defendant's mental state); *Diaz v. United States*, 602 U.S. 526, 534 (2024) (finding no error because the expert witness did not "necessarily describe [the defendant's] mental state"). The focus of the testimony at issue was how Williams—both typically and specifically in this case—conducted nexus analysis. During the lengthy discussion of his education, training, experience, and process, Williams did not suggest a person's mental state was a relevant factor in analyzing nexus. Nor did he reference McBee's mental state when discussing how he conducted the nexus analysis in this case. In fact, the government, during its closing argument, recognized McBee's knowing possession of the firearm and ammunition remained a disputed element, rather than relying on Williams's testimony to assert the element had been satisfied. *See Maryboy*, 138 F.4th at 1286 (looking to the government's closing argument to determine if it was relying on expert testimony to establish mens rea). It is therefore far from obvious whether Williams, despite alluding to the "elements of the crime," was weighing in on McBee's mental state at all.

Second, even supposing the references to the "elements of the crime" were opinions about the scienter requirement, it is unclear whether the jury could construe such statements as a "final conclusion" regarding McBee's mens rea. *See id.* at 1286-

8

87 ("The critical question is whether the opinion *allows the fact finder to make an additional inference* as to whether the defendant had the mental state or condition constituting an element of the crime charged." (quotation omitted) (emphasis added)). Jury Instruction 14 tasked the jurors with determining, among other things, whether it was proven beyond a reasonable doubt that McBee knowingly possessed a firearm. The term "elements" does not appear in that instruction. Given the mismatch between the articulation of the testimony and the language of the jury instruction,[3] it is unclear whether the jury, even if it credited Williams's statements, would necessarily have drawn a connection between the expert testimony and the required finding of mental state. *See id.* at 1284-85 (holding Rule 704(b) is violated when experts offer testimony which, if believed, "necessarily dictates" a final conclusion regarding the defendant's mental state).

> Moreover, Jury Instruction 15 defined the term "knowingly" as follows:
>
> When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of his possession

---

[3] This mismatch is particularly notable because the plain meaning of the term "elements" as used in common parlance is distinguishable from the meaning of the term as used in the context of criminal law. *Compare Element*, Oxford English Dictionary (3d ed. 2026) ("One of the simple substances of which all material bodies are compounded) *with Elements of Crime*, Black's Law Dictionary (12th ed. 2024) ("The constituent parts of a crime – [usually] consisting of the actus reus, mens rea, and causation – that the prosecution must prove to sustain a conviction.").

of the firearm or ammunition, unless the defendant did not actually believe he was in possession of the firearm or ammunition.

ROA Vol. I at 133. During his testimony, Williams did not offer any opinion which "substantively tracked" the language in the jury instructions. *Maryboy*, 138 F.4th at 1287. It is therefore not obvious whether the jury was precluded from "mak[ing] an additional inference as to whether the defendant had the mental state."[4] *Id.* at 1286 (quotation omitted). Thus, McBee fails to show the plainness of a Rule 704(b) violation, assuming any exists at all.

### ii. Federal Rule of Evidence 403

Because McBee failed to make any objection to the Williams testimony, his challenge under Rule 403 is also subject to plain error review. *See Olano*, 507 U.S. at 732. Pursuant to Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

McBee asserts Williams stepped outside of his area of expertise and instructed the jury on the applicable law by testifying that "all the elements had been met."

---

[4] In addition, Jury Instruction 9 described Williams's testimony as "opinions concerning the firearm and ammunition affecting and/or traveling through interstate commerce." ROA Vol. I at 127. To the extent it clarified the scope of testimony at issue, Jury Instruction 9 further undermines the argument that the jury plainly construed Williams's testimony as a "final conclusion . . . that [McBee] acted with the requisite mens rea." *United States v. Maryboy*, 138 F.4th 1274, 1284 (10th Cir. 2025).

This, according to McBee, was unfairly prejudicial because the jury would likely have deferred to the testimony of an admitted expert, rather than drawing its own conclusions. In an attempt to establish the plainness of this purported error, McBee points to Federal Rules of Evidence 403, 702, and 704.[5]

McBee again fails to demonstrate plainness.[6] For the reasons discussed above, it is unclear whether Williams opined about matters beyond his recognized field of expertise. Williams's mere references to the "elements of the case" is not sufficient to plainly establish 1) he was testifying as to McBee's mental state or 2) the jury could construe the testimony as evidence relevant to the required finding of McBee's mental state. As McBee fails to clearly demonstrate any unfair prejudice, let alone

---

[5] Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

[6] The court again declines to address other requirements of plain-error review. *See Doe*, 154 F.4th at 786.

that any such unfair prejudice substantially outweighed the probative value of Williams's testimony, his Rule 403 challenge falls short.

### B.  18 U.S.C. § 922(g)(1)

Finally, McBee appeals the district court's denial of his motion to dismiss the indictment. In the district court, McBee raised both a facial and an as-applied challenge to § 922(g)(1), asserting a violation of his Second Amendment right. On appeal, he pursues only an as-applied challenge. A preserved challenge to the constitutionality of a statute is reviewed de novo. *See United States v. Harjo*, 122 F.4th 1240, 1245 (10th Cir. 2024).

As McBee concedes from the outset, binding precedent compels an affirmance of the district court's ruling. As held in *Vincent v. Bondi*, § 922(g)(1) may constitutionally be applied to nonviolent offenders. *See* 127 F.4th at 1266. Thus, the district court did not err in denying McBee's motion to dismiss his indictment.

## IV.  CONCLUSION

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Michael R. Murphy
Circuit Judge